FILED

2016 Mar-28  AM 11:18
U.S. DISTRICT COURT
N.D. OF ALABAMA



## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | |
|---|---|
| **GREGORY CAMPBELL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 4:14-CV-1878-VEH** |
| ) | |
| **GEICO INDEMNITY COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM OPINION

This is a civil action filed by the plaintiff, Gregory Campbell, appearing *pro se*,[1] against the defendant, GEICO Indemnity Company ("GEICO"). (Doc. 1-1). The action was originally filed in the Circuit Court of Cleburne County, Alabama. (Doc. 1-1). It was removed to this court on October 2, 2014. (Doc. 1-1).

The complaint contains one count and alleges, in pertinent part, that

> on or about August 26, 2012, the [p]laintiff[] was the driver of a motorcycle . . . when a phantom vehicle entered his lane of traffic causing him to wreck. [The driver of] [t]his phantom vehicle negligently or wantonly caused or allowed [the] vehicle to enter the [p]laintiff's lane of traffic causing an accident. As a proximate consequence of the negligence of the driver/operator of the uninsured motor vehicle, the [p]laintiff was caused to suffer injuries and damages.

---

[1] The plaintiff was represented by counsel at the time this action was filed. Counsel was allowed to withdraw on June 23, 2015. (Doc. 11). New counsel for the plaintiff has not appeared.

(Doc. 1-1 at 4-5).  The plaintiff states that his injuries include: "physical injuries, mental anguish, undue worry, and concern," and that the plaintiff "was caused to seek the services of . . . hospitals and physicians and ha[s] incurred charges and bills related to same."  (Doc. 1-1 at 5).  The complaint also alleges that GEICO insured him at the time of the accident, and "provided, among other coverages, underinsured and uninsured motorist coverage and benefits[.] (Doc. 1-1 at 4).  He demands a judgment against GEICO in the amount of $200,000, plus costs.  (Doc. 1-1 at 5).  Although the plaintiff does not specify why GEICO is liable for his injuries, the court assumes that the plaintiff's claim is based on the uninsured/underinsured motorist coverage that he alleges GEICO provided him.

The case comes before the court on GEICO's motion for summary judgment. (Doc. 14).  On October 2, 2015, this court gave the *pro se* plaintiff "express, ten-day notice of the summary judgment rules, of his right to file affidavits or other materials in opposition to the motion, and of the consequences of default." *McBride v. Sharpe*, 981 F.2d 1234, 1236 (11th Cir. 1993) (quotation and citation omitted).  (Doc. 15). He has failed to respond to the motion. For the reasons stated herein, the motion will be **GRANTED**, and this case will be **DISMISSED with prejudice**.

I.     STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper if there

is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (internal quotation marks and citation omitted).  The party requesting summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings in answering the movant. *Id.* at 324. By its own affidavits – or by the depositions, answers to interrogatories, and admissions on file – it must designate specific facts showing that there is a genuine issue for trial. *Id.*

The underlying substantive law identifies which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the evidence presented by the non-movant to rebut the moving party's evidence is merely colorable, or is not significantly probative, summary judgment may still be granted. *Id.* at 249.

How the movant may satisfy its initial evidentiary burden depends on whether that party bears the burden of proof on the given legal issues at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). If the movant bears the burden of proof on the given issue or issues at trial, then it can only meet its burden on summary judgment by presenting *affirmative* evidence showing the absence of a genuine issue of material fact – that is, facts that would entitle it to a directed verdict if not controverted at trial. *Id.* (citation omitted). Once the moving party makes such an affirmative showing, the burden shifts to the non-moving party to produce "significant, probative *evidence* demonstrating the existence of a triable issue of fact." *Id.* (citation omitted) (emphasis added).

For issues on which the movant does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. *Id.* at 1115-16. First, the movant may simply show that there is an absence of evidence to support the non-movant's case on the particular issue at hand. *Id.* at 1116. In such an instance,

the non-movant must rebut by either (1) showing that the record in fact contains

supporting evidence sufficient to withstand a directed verdict motion, or (2)

proffering evidence sufficient to withstand a directed verdict motion at trial based on

the alleged evidentiary deficiency. *Id.* at 1116-17. When responding, the non-movant

may no longer rest on mere allegations; instead, it must set forth evidence of specific

facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996). The second method a movant in this

position may use to discharge its burden is to provide affirmative *evidence*

demonstrating that the non-moving party will be unable to prove its case at trial.

*Fitzpatrick*, 2 F.3d at 1116. When this occurs, the non-movant must rebut by offering

*evidence* sufficient to withstand a directed verdict at trial on the material fact sought

to be negated. *Id.*

## II.   FACTS

This court's summary judgment scheduling order provides:

> The first section [of the brief of the party opposing summary
> judgment] must consist of only the non-moving party's disputes, if any,
> with the moving party's claimed undisputed facts. The non-moving
> party's response to the moving party's claimed undisputed facts shall be
> in *separately numbered* paragraphs that coincide with those of the
> moving party's claimed undisputed facts. Any statements of fact that are
> disputed by the non-moving party must be followed by a specific
> reference to those portions of the evidentiary record upon which the
> dispute is based. *All material facts set forth in the statement required of
> the moving party will be deemed to be admitted for summary judgment
> purposes unless controverted by the response of the party opposing*

*summary judgment.*

(Doc. 3 at 17) (emphasis in original). The plaintiff has not filed any in opposition to

the motion for summary judgment. Accordingly, the following facts, set out in the

movant's brief, are deemed to be admitted:

> 1.      On August 26, 2012, Campbell and members of his motorcycle club—the Saints—were returning home to the Huntsville area from Columbus, Georgia. (Exhibit A, Deposition of Greg Campbell, [62]$^2$:1 – 64:17). That morning, Campbell "got up, took a shower, got dressed, pack[ed] up the scoot, [and] ate a quasi-continental breakfast…at the two-star motel" he was staying at in Columbus. (Ex. A, 60:10-21). In addition to these things, Campbell also took a myriad of medications including oxycodone, morphine, Topamax—a medication for "hallucinating migraines"—a "lot of psychotropics," and Lyrica—for fibromyalgia. (Ex. A, 80:10 – 86:8).

> 2.      Campbell claims that despite taking oxycodone four times a day and morphine twice a day, both for pain prior to the accident, no doctor put him on any kind of driving restrictions, but admitted that "[e]very doctor [he has] wants [him] off of that motorcycle. Every one of them." (Ex. A, 86:9-18). Campbell testified that this is because "I am old, I am crippled, they don't think I should ride it …." (Ex. A, 86:19 – 87:1).$^3$

> 3.      After taking these medications, Campbell and his group—the Saints—got on their bikes and traveled from Columbus towards Opelika, Alabama on Highway 280 prior to joining Highway 431 toward

---

$^2$  Correction to citation made by the court.

$^3$ The court disregards as not relevant to any issue in this case the last portion of this statement by Campbell, specifically, that "[e]very doctor [he has] wants [him] off of that motorcycle. Every one of them." (Ex. A, 86:9-18). Campbell testified that this is because "I am old, I am crippled, they don't think I should ride it …." (Ex. A, 86:19 – 87:1).

Huntsville. [(Ex. A, 62:7-64:64)].[4]

4.      About an hour after joining Highway 431, Campbell was "pulling anchor way in the back" of the group "going down a twisty, curvy part of 431…." (Ex. A, 64:18 – 22). The group had gotten ahead of Campbell and he recalls "looking up ahead and saying, I have got to catch up." (Ex. A, 64:23 – 65:1). Campbell testified that he "had done gotten tractor trailer lengths apart" from his group. (Ex. A, 70:6-22).

5.      Campbell, in an attempt to catch up with his group "increase[d] the throttle, [to] give it more fuel." (Ex. A, 70:6 – 71:5).

6.      For various reasons, some of which are in dispute—whether a phantom vehicle was in Campbell's lane or not—Campbell's motorcycle ultimately left the paved roadway of Highway 431, entered the gravel shoulder where Campbell lost control. (Ex. A, 65:12 – 66:15; Exhibit B, Deposition of Thomas Lyner, 11:8 – 13:5; Exhibit C, Deposition of Linda Lyner, 5:23 – 6:15).[5] Campbell fell over an embankment or cliff

---

[4] Correction to citation made by the court.

[5] The court notes that the plaintiff testified:

And as I started to give it the wick -- I thought it was a tractor trailer. I remember it being a tractor trailer -- eased over into my lane.

Q. Okay.

A. And the more he eased over into my lane coming my way, the more I eased over to the right.

Q. Okay.

A. Until he had so much of my lane, that I dropped off, and the drop-off of the asphalt -- they had been doing some paving in the area it looked to me like, and it was about a good six inches at least.

Q. Okay.

A. And when I dropped off that pavement, that pea gravel from them paving, I hit

that pea gravel and the bike went squirrely, and I -- there was two options and I chose the wrong one. And when -- when the bike started headed towards the woods, I did not want to dance with my bike in the woods.

Q. Okay.

A. It would have been a bad, bad dance. So I dove into what I thought was a willow bush and it turned out to be a willow tree, and I fell through the branches of the willow tree into the ravine down below, which, you know, ten, fifteen, twenty feet and my head was in the water. And thank God for Mr. Lyner, he kept me from drowning. And I couldn't pull myself out. I couldn't –

(Doc. 14-2 at 18(65-66).

Thomas Lyner was directly behind the plaintiff's vehicle when the accident happened. He testified:

A. We went down the curve and this is little straight and (witness indicates) somehow he veered off the road. I have no idea how he got off the road.

Q. Okay.

A. But he veered off the road. And they was paving the road. But they wasn't paving it that day, but they had been paving it because this was Sunday I believe. And they had loose gravel on the side of the pavement. And he veered off and hit that gravel.

Q. Right.

A. And he tried -- in my opinion now he tried to correct it.

Q. Uh-huh.

A. Because he turned his wheel back and he hit the edge of the pavement. Am I going too fast for you?

Q. No.

A. And I thought he was coming up in the road, so I slammed my brakes on.

Q. Okay.

and into a ravine. *Id.* Despite the dispute over the existence of a phantom vehicle in Campbell's lane of travel, Campbell admitted: "I was not paying attention. I lost situational awareness." (Ex. A, 73:1 – 74:5)(emphasis added).[6]

---

A. When he come back up, the motorcycle went up in the air.

Q. Okay.

A. Approximately ten, maybe ten foot, looked like ten foot. And he come off the motorcycle and him and the motorcycle went down in the creek.

Q. Is that when he hit the edge of the pavement again? That's when he popped up?

A. Yeah. And I put my vehicle in park, slammed it in park. And told my wife, I said move it or whatever. I don't remember what I told her. I run down the bank and he was down there and I guess his helmet busted or something because it was filling up with water. But the motorcycle was up above him. And he was down below the motorcycle. And I picked his head up and he was wanting me to move him and I said no, I am not going to move you because I don't know what's wrong with you. And I said when the paramedics get here whatever, you know, they can move you or whatever.

(Doc. 14-3 at 4(11)-5(13)).

Linda Lyner was in the car with her husband Thomas at the time of the accident. She testified that she did not remember the facts to be any different than how Thomas Lyner testified. (Doc. 14-4 at 3(6)). She added that she does not remember "any vehicle coming up the hill that was in [her] lane of travel." (Doc. 14-4 at 3(6)).

[6] The court notes that the full context of this statement is as follows:

Q. So it was a way that [the tractor trailer] kind of slowly -- sounds like slowly inched over towards you?

A. Yeah, he -- and I am inching, and because I am looking at him and looking at the pack and looking at him and I am inching over and inching over and I am not paying attention to the side of the road because I am looking at him, looking at them, looking at him and looking at them, and then all the sudden it is --

Q. You have lost control?

* * *

8.      On July 31, 2015, GEICO served Campbell with its first set of Interrogatories and Requests for Admission. (Exhibit D, Requests with Service Email). GEICO's requests for admission asked Mr. Campbell to admit that "no tractor-trailer, semi, or other large commercial vehicle entered your lane immediately prior to the incident;" and that "the incident was caused, at least in part, by your own negligence." (Ex. D, pp. 6 of 17). Campbell failed to respond to those requests as required by the Federal Rules of Civil Procedure.

9.      At this time, no testimony has been elicited from any medical provider that purportedly cared for Mr. Campbell relating that care to any injury Campbell claims to have suffered in the relevant accident. No doctor has testified that any of the care Campbell claims was caused by the accident was reasonable and necessary. And no doctor has testified as to the extent of Campbell's prior medical conditions causing him to require multiple opioid pain medications prior to the accident.

(Doc. 14-1 at 2-5).[7]

## III.   ANALYSIS

The plaintiff's claims against GEICO require, at the very least, that there was an "uninsured" or "underinsured" tractor trailer truck that engaged in the conduct

---

A. I have lost it.

Q. Okay.

A. And I was not paying attention.  I lost situational awareness.

(Doc. 14-2 at 20(73-74)).

[7] Because the plaintiff is proceeding *pro se* the court has verified that the evidence cited supports each fact set out herein.

described by the plaintiff in his deposition. In this case, the plaintiff is deemed to have admitted that there was "no tractor-trailer, semi, or other large commercial vehicle [which] entered your lane immediately prior to the accident." (Doc. 14-5 at 6). Fed. R. Civ. P. 36(a)(3); *see also*, *Broad. Music, Inc. v. L.S. Horne Inv. III, LLC*, No. 1:14-CV-01157-ELR, 2015 WL 1812777, at *1 (N.D. Ga. Apr. 16, 2015) (noting that the failure to respond to a Request for Admission results in that request being admitted). Since there was no truck, there is no claim.

The defendant also notes that the plaintiff has failed to produce evidence of any injury proximately caused by either the negligence or wantonness of the alleged tractor trailer. "Proximate cause is an essential element of both negligence claims and wantonness claims.... Proximate cause is an act or omission that in a natural and continuous sequence, unbroken by any new independent causes, produces the injury and without which the injury would not have occurred." *Lingefelt v. Int'l Paper Co.*, 57 So. 3d 118, 122-23 (Ala. Civ. App. 2010) (internal quotations and citations omitted). Because the plaintiff has failed to produce such evidence, summary judgment on the plaintiff's claims is due to be granted.[8]

---

[8] One might assume some injuries proximately caused by the type of wreck described by the plaintiff and the witnesses. However, the defendant notes that the plaintiff has had many injuries over the years and that expert testimony would be necessary to determine which injuries are connected to this incident. (Doc. 14-1 at 10-11). Regardless, in the absence of any showing by the plaintiff on summary judgment that he was injured at all, even through lay testimony, the issue is moot. Also, "[i]t is the rule in [Alabama] that proof of reasonableness of charges for

The wantonness claim also fails for alternative reason that there is a lack of evidence of wantonness on the part of the driver of the alleged tractor trailer. Wantonness is the doing of some act or the omission to do some act with reckless indifference that such act or omission will likely or probably result in injury. *Crouch v. N. Alabama Sand & Gravel, LLC*, No. 1131086, 2015 WL 1388139, at *5 (Ala. Mar. 27, 2015) (internal citations omitted). As noted by the defendant, even assuming that the tractor trailer truck existed, there has been no such showing by the plaintiff.[9]

---

surgical or medical services is a matter for expert opinion." *Aetna Life Ins. Co. v. Hare*, 47 Ala. App. 478, 484, 256 So. 2d 904, 908 (Civ. App. 1972) (*citing Birmingham Amusement Co. v. Norris*, 216 Ala. 138, 112 So. 633; *Harden v. Ala. Gr. Sou. RR Co.*, 45 Ala.App. 301, 229 So.2d 803)). As noted by the defendant, summary judgment is also due to be granted because this evidence too is lacking. Finally, the plaintiff's claims for <u>mental anguish damages</u> are due to be dismissed for the alternative reason that the plaintiff testified that the wreck did not bother him. (Doc. 14-2 at 23(85)).

[9] The plaintiff also admits that the accident "was caused, at least part, by [his] own negligence." (Doc. 14-5 at 6). *See* FED. R. CIV. P. 36(a)(3). The defendant argues that this admission establishes the plaintiff's "contributory negligence." As the Alabama Supreme Court has noted:

> Contributory negligence is an affirmative and complete defense to a claim based on negligence. In order to establish contributory negligence, the defendant bears the burden of proving that the plaintiff 1) had knowledge of the dangerous condition; 2) had an appreciation of the danger under the surrounding circumstances; and 3) failed to exercise reasonable care, by placing himself in the way of danger. *See Knight v. Alabama Power Co.*, 580 So.2d 576 (Ala.1991).

*Ridgeway v. CSX Transp., Inc.*, 723 So. 2d 600, 606 (Ala. 1998). In the absence of any argument by GEICO that the above elements have been satisfied, summary judgment on this issue is not appropriate simply because of the plaintiff's admission. The same goes for GEICO's argument, in a footnote, that the plaintiff was contributorily negligent because he "was not paying attention," and that he "lost situational awareness." (Doc. 14-1 at 6, n. 3). Regardless, the point is moot in light of the court's holding.

## IV.    CONCLUSION

For the foregoing reasons, summary judgment will be **GRANTED** and this

case **DISMISSED with prejudice**.  A final order will be entered.

**DONE** and **ORDERED** this 28th day of March, 2016.

**VIRGINIA EMERSON HOPKINS**
United States District Judge